[Civ. No. 4256.  First Appellate District, Division One.—October 17, 1922.]

THE MEYERCORD COMPANY, INC. (a Corporation), Respondent, v. CLARK WISE & CO. (a Corporation) et al., Appellants.

[1] ASSUMPSIT — GOODS SOLD AND DELIVERED — PRICE — FRAUD — EVIDENCE—FINDINGS.—In this action in *assumpsit* for goods sold and delivered, the evidence fully sustained the findings of the trial court that at the time defendants gave the order for the goods plaintiff did not state to them that the price quoted was the reasonable and market value, that defendants did not rely upon any such assurance, that the price agreed upon was not exorbitant or excessive, and that the market value of the goods was not less than the price charged, and there was no merit in the defense that plaintiff procured the contract through fraudulent representations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Samuel T. Bush for Appellants.

Ernest K. Little for Respondent.

TYLER, P. J.—This action is one in *assumpsit* for goods sold and delivered in the agreed sum of $450, representing the value of some 7,200 decalcomania transfers.

Defendants, by their answer, denied any indebtedness in a greater sum than $165.05, and alleged that the contract was procured by fraudulent representations.  Judgment was rendered in favor of plaintiff for the full amount prayed for, and defendants appeal.

It appears from the evidence that plaintiff corporation is a manufacturer of what is known as decalcomania transfers, which are designs or printed figures on specially prepared paper so manufactured as to be permanently affixed to furniture or wood.

Defendants are copartners engaged in the piano and musical instrument business, and use transfers indicating their

firm name which they affix to the fall boards of pianos and talking machines. They were desirous of securing some of these articles in their business, and accordingly one of the officers of defendant company wrote to the plaintiff corporation that they were in the market for decalcomania transfers. The parties had transacted business together for a period of over thirty years. Upon receiving this communication plaintiff sent its representative to interview defendants. Samples were submitted, and after a discussion concerning the price an order was obtained from defendants for 2,500 each of two sizes of transfers at an agreed price of six and one-half cents per transfer. The agreement was reduced to writing and it provided that the order was not subject to countermand. About a month thereafter defendants advised plaintiff that there must have been some mistake concerning the price, as they had received quotations from other firms at a much lower figure than their agreement with plaintiff called for, and in this communication they requested plaintiff, in the event that there was no mistake, to cancel the order. In reply thereto plaintiff informed defendants that it had telegraphed to its representatives to get in touch with them and explain the difference in price to defendants' satisfaction. The representative called but no adjustment was had between the parties. Shortly thereafter the entire order, including an overage of some 2,200 transfers, was received by defendants. A lengthy correspondence was thereafter entered into between the parties which resulted in plaintiff agreeing to allow a discount of fifteen per cent from the invoice as rendered. Defendants refused to pay any sum in excess of $168.05. Negotiations for a settlement were thereupon ended and the present suit followed.

By their answer defendants alleged that at the time they gave their order the representative of plaintiff assured them that the price agreed upon for the goods was the reasonable and market value thereof, and they further alleged that they relied upon these representations and did not know otherwise, and that the statements were false and plaintiff knew that the price was exorbitant and excessive, and that it was a deliberate and willful overcharge. Plaintiff claims that the contract was fair and reasonable.

No question is here raised as to the overage. Plaintiff was willing to accept the return of the transfers not included in

the order, and to accept the amount of the contract price for the number agreed upon. Defendants made no offer to return the excess quantity except upon condition that the entire contract be canceled.

[1] It appears in evidence that about seventy-five per cent of decalcomanias used in the United States are supplied to the trade by plaintiff, and that its schedule of prices practically establishes the market value of the articles. It further appears that the price agreed upon by the parties was the usual one, and that similar goods were not sold to others for a less price. The trial court found that at the time defendants gave the order for the transfers plaintiff did not state to them that the price quoted was the reasonable and market value, and that defendants did not rely upon any such assurance. It further found that the price agreed upon was not exorbitant or excessive, and that the market value of the goods was not less than the price charged. The evidence fully sustains the findings. There is therefore no merit in the defense that plaintiff procured the contract through fraudulent representations.

Appellants further claim that the evidence shows without contradiction that the representative of plaintiff made use of his printed list of prices in an improper manner in reaching the amount charged. In this behalf it is contended that the contract price was figured on a basis of running the smaller and larger decalcomanias together on a single plate, and that under such method of combination an order for 2,500 of each of the transfers would have justified a charge of but one-half of the amount made. Evidence upon the subject shows that it was not the custom to accept orders in this manner, and that the quotation was made on the usual basis and was not exorbitant. This being so it follows that the judgment should be, and it is, hereby affirmed.

Kerrigan, J., and St. Sure, J., *pro tem.,* concurred.